IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

BRUNSON ROBERTS PLAINTIFF
ADC #127841

V. Case No. 4:26-CV-00331-KGB-BBM

DEXTER PAYNE, *et al.* DEFENDANTS

**RECOMMENDED DISPOSITION**

The following Recommended Disposition ("Recommendation") has been sent to Chief United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within 14 days of the date of this Recommendation. If you do not file objections, Chief Judge Baker may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

## I. INTRODUCTION

On April 6, 2026, Plaintiff Brunson Roberts, an inmate in the Varner Supermax Unit ("VSM") of the Arkansas Division of Correction ("ADC"), filed a two-page "Motion to Receive Legal Supplies" that was docketed as a *pro se* Complaint under 42 U.S.C. § 1983. (Doc. 1). Roberts named four of his fellow inmates as Plaintiffs. *Id.* at 1. Pursuant to the

Court's usual practice, an individual case was opened for each inmate. This Recommendation addresses Roberts's case only.[1]

## II. PROCEDURAL POSTURE

In the two-page handwritten Complaint,[2] Roberts claimed that he and his fellow inmates on "behavior control" were being impeded in their litigation efforts. (Doc. 1 at 1). The Complaint was unaccompanied by a filing fee or motion to proceed *in forma pauperis* ("IFP Motion"). By Order dated April 7, 2026, the Court directed Roberts to file an amended complaint on the court-approved form, *see* LOCAL RULE 9.1, and to either pay the filing fee in full or file an IFP Motion. *Id.*

Roberts filed a Motion for Extension of Time, in which he noted he was a "three-striker." (Doc. 3). By Order dated April 20, 2026, the Court granted Roberts 30 more days to file an amended Ccomplaint on the court-approved form and to either pay the filing fee in full or file an IFP Motion. (Doc. 4 at 2). The April 20 Order noted that, because Roberts was a three-striker, Roberts could not proceed *in forma pauperis* unless he was in imminent danger of serious physical injury; thus, if Roberts sought to proceed *in forma pauperis*, his amended complaint must clearly explain why he is eligible under 28 U.S.C. § 1915(g) to proceed without pre-payment of the fee. *Id.*

---

[1] After all other proposed co-Plaintiffs failed to pursue their cases, it was recommended that those cases be dismissed without prejudice. *See Couch v. Payne*, No. 4:26-CV-00332-KGB-BBM (E.D. Ark. May 12, 2026), *rec. adopted* (June 8, 2026); *Tory v. Payne*, No. 4:26-CV-00333-KGB-BBM (E.D. Ark. May 26, 2026), *rec. adopted* (June 22, 2026); *Jorsch v. Payne*, No. 4:26-CV-00334-KGB-BBM (E.D. Ark. May 12, 2026), *rec. adopted* (June 8, 2026); *Robertson v. Payne*, No. 4:26-CV-00335-KGB-BBM (E.D. Ark. May 13, 2026).

[2] Roberts attached seven pages of prison-disciplinary documents as exhibits. (Doc. 1 at 3–9).

To date, Roberts has not filed an amended complaint on the court-approved form; and the time to do so has passed. Instead, Roberts has filed a handwritten Amended Complaint, (Doc. 16); prison-grievance documents with no accompanying notice or motion, (Doc. 13); and documents titled: "Motion for Preliminary Injunction for Evidence Presented—No Legal Supplies," (Doc. 5); "Imminent Danger," (Doc. 8);[3] "Conspiracy of Murder Motion," (Doc. 9); "Motion to Preserve Video Footage," (Doc. 10); "Motion to Stop Rosevelt Barden's Harassment and Retaliation," (Doc. 14); "Emergency…Motion to Preserve Video Footage…[and] For Extension of Time," (Doc. 15); "Motion to Receive Legal Property…Due to Conditions of Confinement Getting Worse Being Housed in Heat Taking Mental Health Medicine Making Me Dizzy and Sick," (Doc. 18); and "Motion for Evidentiary Hearing," (Doc. 19).

Because Roberts has failed to file an amended complaint on the court-approved form, it is recommended that this case be dismissed under Federal Rule of Civil Procedure 41(b) for failure to comply with the Court's Orders. Alternatively, it is recommended that the case be dismissed because none of Roberts's assertions—spread across the 14 documents he has filed in this case—demonstrate his eligibility to proceed without pre-payment of the fee under 28 U.S.C. §1915(g).

---

[3] This document was originally filed as a new civil rights complaint and assigned a new case number: *Roberts v. Does*, 4:26-CV-00402-KGB-ERE (E.D. Ark. Apr. 20, 2026). But, after Roberts notified the Court that he wished to have it filed in *this* case, (Doc. 6), the docketing error was corrected, and the second case was administratively terminated, (Doc. 7).

## III. DISCUSSION

### A. Roberts Failed to Comply with Local Rule and Court Orders.

The Court turns first to Roberts's failure to comply with the Court's Orders. Per LOCAL RULE 9.1: "All actions under 42 U.S.C. § 1983…filed in this district by incarcerated persons shall be submitted on the court-approved forms supplied by the Court unless a district judge or magistrate judge…in his or her discretion, accepts for filing a complaint that is not submitted on the approved form." And Rule 41(b) of the Federal Rule of Civil Procedure allows the Court to "dismiss the action or any claim," "[i]f the plaintiff fails to prosecute or to comply with…a court order." FED. R. CIV. P. 41(b); *Link v. Wabash R. Co.*, 370 U.S. 626, 629–30 (1962).

On four occasions, this Court has impressed on Roberts the requirement that he file an amended complaint on the court-approved form. First, the Court directed him to do so on April 7, 2026. (Doc. 2 at 2, 4). On April 20, the Court extended Roberts's time to file the amended complaint on the court-approved form. (Doc. 4 at 1–2). On April 30, the Court directed Roberts to comply with the Court's April 20 Order if he wished to proceed with this action. (Doc. 7). Then, on May 8, the Court reiterated that Roberts's amended complaint was due on May 26, 2026. (Doc. 11). The court-approved form was sent to him on two occasions. *See* (Doc. 2 at 4); (Doc. 4 at 2).

Yet, still, Roberts has failed to comply with the Court's Orders and file an amended complaint on the court-approved form. Although the Court is mindful of Roberts's assertions that he has been deprived of his legal property, *see, e.g.*, (Doc. 14 at 1), (Doc. 15 at 2–3), and does not "have any Court[-]filed documents," (Doc. 16 at 1), his claims are

belied by the fact that he attaches *previously docketed court documents*, (Doc. 5 at 7–10), along with grievances, disciplinaries papers, time-computation cards, inmate-request forms, medical records, and other supporting exhibits to his filings. *See, e.g.,* (Doc. 1 at 3–9); (Doc. 3 at 2–4); (Doc. 5 at 4–10, 12–18); (Doc. 14 at 2); (Doc. 15 at 5–6); (Doc. 17 at 2–28); (Doc. 19 at 3–6). He also has not requested another copy of the court-approved form. In short, it appears that Roberts has simply ignored the Court's Orders and, in doing so, failed to comply with LOCAL RULE 9.1. For that reason, it is recommended that Roberts's Amended Complaint, (Doc. 16), be dismissed without prejudice and this case be closed based on Roberts's failure to comply with Court orders. FED. R. CIV. P. 41(b)

**B. Alternatively, Roberts May Not Proceed *In Forma Pauperis*.**

Alternatively, it is recommended that the case be dismissed without prejudice because Roberts is a three-striker who has not paid the court filing fee or shown his eligibility to proceed *in forma pauperis*. Under the PLRA, prisoners may not proceed *in forma pauperis* if, on three or more prior occasions while they were detained, they had an action or appeal dismissed as frivolous, malicious, or for failure to state a claim. 28 U.S.C. § 1915(g). Roberts has had at least three cases dismissed for one of those reasons. *See Roberts v. Payne*, No. 4:21-CV-00441-LPR (E.D. Ark. Mar. 22, 2022) (dismissed for failure to state a claim on which relief can be granted); *Roberts v. Wilkins*, No. 4:18-CV-00149-JM (E.D. Ark July 24, 2018) (same); *Roberts v. Hobbs*, No. 2:07-CV-00022-SWW (E.D. Ark. Mar. 21, 2007) (same), *aff'd*, No. 07-1831 (8th Cir. 2008).

Because Roberts is a "three-striker," he can proceed *in forma pauperis* only if he was in imminent danger of serious physical injury at the time he filed his Complaint. *See*

28 U.S.C. § 1915(g); *Ashley v. Dilworth*, 147 F.3d 715, 717 (8th Cir. 1998); *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003) ("[T]he requisite imminent danger ... must exist at the time the complaint or the appeal is filed, not when the alleged wrongdoing occurred."). Despite filing an Amended Complaint, Roberts's allegations do not satisfy this standard.

**1. Allegations**

Complaint (Doc. 1). In the original Complaint, Roberts sought to "file a class action civil lawsuit about the custom and policy being used of behavior control to impede any and all litigation efforts." (Doc. 1 at 1). He alleged that he and his co-Plaintiffs received "repeated frivolous disciplinaries" with the intent to keep them in isolation and deny them privileges, such as the ability to use the phone. *Id.* He also claims that inmates on behavior control are denied ink pens and legal books, which denies them meaningful access to the courts. *Id.* at 1–2.

On a personal note, Roberts writes that he went 11 months and 13 days without a disciplinary charge but was denied a video visit with his dying mother. (Doc. 1 at 2). Then, on March 17, 2026, while waiting to have his funeral furlough approved, Roberts "was assaulted in handcuffs" and written a disciplinary. *Id.* at 2–3. A second "bogus" disciplinary followed on March 30, 2026. *Id.* at 2, 5. Roberts filed the Complaint on April 6, 2026, seeking "supplies to do the proper paperwork before anything else occurs undocumented." *Id.* at 2.

Amended Complaint (Doc. 16). Roberts filed his Amended Complaint on May 22, 2026. (Doc. 16). He begins by noting that he "has no legal documents of the exact dates

nor does he have any Court[-]filed documents." *Id.* at 1. So, he provides a "blueprint of [his] claims that need processing." *Id.*

Chronologically first, Roberts seeks to challenge a disciplinary proceeding that occurred in March 2024. (Doc. 16 at 5). Next, Roberts alleges that, on March 17, 2026, while waiting for the furlough to attend his mother's funeral, Lt. Pennington and Sgt. Morgan approached his cell and accused him of being high. *Id.* at 4. As they were escorting him from his cell, Lt. Pennington slammed Roberts into the floor, face first. *Id.* Roberts also alleges that both men, weighing a total of 600 pounds, fell on top of him. *Id.* He was taken to an isolation shower, where he was denied "medical care and received no pain medicine or [a] pre lock up [medical assessment]." *Id.* at 4. At the time of the Amended Complaint, he was "still suffering intense pain in [his] wrist and back from th[e] assault." *Id.* at 4.

Then, on April 2, 2026, Roberts received another "scam" disciplinary, which resulted in Roberts's "biggest advocate" being taken off his visitation list. (Doc. 16 at 6). Roberts's final dated allegation occurred on May 14, 2026. (Doc. 16 at 4). On that date, C.S.O. Barden "attempt[ed] to use unnecessary force" on Roberts by calling the cell-extraction team and "trying to spray pepper spray and throw a concus[s]ion grenade in [Roberts's] cell" before giving Roberts "3 direct orders on camera to submit to hand restraints." *Id.* at 4–5.

Roberts also alleges that he has been put on an 18-month "incentive" program but is forced to restart the program when he is found guilty of a rule violation. (Doc. 16 at 6–7). As a result, he has been in the program for two-and-a-half years. *Id.* at 7. He alleges

that he should be given a chance to appeal the decision to restart the program. *Id.* Roberts also claims that "the administration" has not accommodated his diagnosed mental-health disorder, resulting in three denials of parole and "false imprisonment." *Id.* at 7. He also vaguely asserts a "pattern" of being denied medical services and medicine. *Id.* at 10.

As for imminent harm, Roberts alleges that "Rosevelt Barden and the yard crew" are bringing drugs into the prison. (Doc. 16 at 12). Roberts has sent emails to ADC superiors but, in return, received only "retaliation and abuse of power from VSM officials." *Id.* at 13. Roberts also asks the Court to look at his document labeled, "Imminent Danger." *Id.* at 12.

**2. "Imminent Danger" Notice**

In the "Imminent Danger" document, Roberts alleges that unidentified officers threatened to use his "disciplinary statement to show T. Dunlap and all her porters[,] so [he] would be labeled a sni[t]ch." (Doc. 8 at 1). Roberts tried to report the incident to Major Barden, but the Major just laughed and said "he could care less what happen[ed] to [Roberts]" because Roberts had filed grievances and lawsuits against him.[4] *Id.* Because of this "malicious" treatment," Roberts believes that "BLOODSHED is inevitable" and that he will be "hurt or injured further." *Id.* at 2. Roberts also claims that he witnessed another inmate "be beaten inches within [] death…" and, a year later, "sprayed with OC spray and

[4] Roberts also alleges that, because of Roberts's actions and a "HIGH level of corruption," C. Tory and J. Couch had disciplinaries written against them. (Doc. 8 at 1). Because the Court's analysis at this stage focuses on whether Roberts has alleged he was in imminent harm at the time of the Complaint, moving forward, the Court will only address Roberts's allegations about other inmates if it is relevant to that inquiry. For the same reason, the Court does not reiterate every allegation brought by Roberts, as many are irrelevant to the imminent-harm analysis.

shot with a riot gun." *Id.* But Major Barden "continue[s] to get away without reprimand." *Id.*

Roberts goes on to complain that he has been "having problems again with [his] food and…experiencing severe chest pains." (Doc. 8 at 3). He claims the "these nurses are denying [his] heart medication," and he is afraid he may have a heart attack. *Id.* "[J]ust a couple of weeks ago[, another inmate] died from lack of medical attention." *Id.* When Roberts is not in isolation, he is allowed to keep his heart medication, Pravastatin, on his person. *Id.* at 4–5. But now, he must rely on the nurses to bring it to him. *Id.* Roberts claims this is the only medication he is not receiving in isolation. *Id.*

Roberts is also "isolated [and] being denied all mental health services by VSM staff." *Id.* Although he is receiving anxiety medication, it is not helping. *Id.* at 4. Due to the compounding disciplinaries, "[his] phone privileges are currently restricted for over a half of a year." *Id.*

### 3. Other Allegations of Imminent Harm

But Roberts's Complaint, Amended Complaint, and "Imminent Danger" Notice are not the only documents containing assertions of imminent harm. Out of an abundance of caution, the Court briefly reviews Roberts's other assertions of harm strewn throughout the case file.

"Motion for Preliminary Injunction for Evidence Presented—No Legal Supplies" (Doc. 5). In his Motion for Preliminary Injunction, filed April 22, 2026, Roberts states that Nurse Pound denied him his heart medication on April 16, 2026. (Doc. 5 at 1, 4). He states he is likely to suffer irreparable harm in the form of an induced heart attack. *Id.* at 1–2.

Roberts also claims that medical staff do not have documentation of his severe scoliosis, resulting in him being denied pain medication for that condition. *Id.* at 2. He continues to state he is being denied access to the law library, his legal property, mental health services, and due process before being placed in punitive isolation, *id.* at 1, 6, 12, 18, and that prisoners in VSM are routinely subject to excessive force, *id.* at 2–3. Finally, he claims that he is suffering from malnutrition and that Corporal Thomas denied him a food tray on April 16, 2026. *Id.* at 3–4.

"Conspiracy of Murder Motion" (Doc. 9). In the "Conspiracy of Murder Motion," Roberts continues to complain about the denial of his heart medication, Pravastatin. (Doc. 9 at 1). He also claims that he started to experience severe chest pains 30 minutes after Corporal Thomas gave him a food tray on an unspecified date. *Id.* Roberts explains that, because of his disciplinaries, his commissary privileges have been revoked. *Id.* at 9. And, without the ability to purchase commissary, "his heart condition has got[ten] so bad because [he is] so maln[o]urished in health." *Id.* at 3.

"Motion to Preserve Video Footage" (Doc. 10). In his Motion to Preserve, Roberts seeks an order preserving the video footage of Lt. Pennington's and Sgt. Morgan's alleged use of force on March 17, 2026. (Doc. 10 at 1). He also asserts there is a plot to use disciplinaries against him to "make Plaintiff restart the 18 month program and take away all privileges to poison plaintiff and deny needed [] personal meds. to induce a heart attack." *Id.*

"Motion to Stop Rosevelt Barden's Harassment and Retaliation" (Doc. 14). In his Motion to Stop Retaliation, Roberts complains of the May 14, 2026 incident during which

Major Barden was allegedly about to attempt a forceful cell extraction with pepper spray.[5] (Doc. 14 at 1). Roberts also claims that Major Barden "took everything," and that he does not have access to his legal property in isolation.[6] *Id.* Roberts was only able to write the Motion to Stop Harassment by borrowing a pen from a neighbor. *Id.* Roberts also notes that he does not have a rescue inhaler. *Id.*

<u>"Emergency…Motion to Preserve Video Footage…[and] For Extension of Time" (Doc. 15)</u>. In his second Motion to Preserve, Roberts seeks an order preserving the video of the three occasions Walter Washington and William Morgan either denied him a food tray or threw the food tray on the floor. (Doc. 15 at 1). Those occasions occurred on May 8, May 10, and May 11, 2026. *Id.* Roberts also asserts that on May 8, Lt. Rogers—by direction of Major Barden—dumped feces all over Roberts's property. *Id.* at 2. Roberts was placed on behavior control, and all his property was confiscated. *Id.* at 2–3. He asks "the Court to notice these incidents…showing a casual connection in retaliation" even though "[he] ha[s] not even filed the lawsuit yet." *Id.* at 3.

<u>"Motion to Receive Legal Property…Due to Conditions of Confinement Getting Worse Being Housed in Heat Taking Mental Health Medicine Making Me Dizzy and Sick"</u>

[5] Based on the wording of both the Amended Complaint allegations, *see* (Doc. 16 at 4–5), and the Motion to Stop Retaliation, (Doc. 14 at 1), Major Barden did not, in fact, use pepper spray or other cell-extraction techniques on that day.

[6] Although Roberts repeatedly asserts that he does not have access to his legal property or "Court-filed" documents, the Court again notes that Roberts must have access to at least some of his legal papers, as he frequently attaches grievances, disciplinaries papers, time computation cards, inmate request forms, previously docketed court documents, medical records, and other supporting exhibits to his filings. *See, e.g.,* (Doc. 1 at 3–9); (Doc. 3 at 2–4); (Doc. 5 at 4–10, 12–18); (Doc. 14 at 2); (Doc. 15 at 5–6); (Doc. 17 at 2–28); (Doc. 19 at 3–6).

(Doc. 18). In his Motion to Receive Legal Property, filed on June 4, 2026, Roberts states that the heat in punitive isolation "is affecting [his] mental health medicine—causing dizziness [and] stomach sickness." (Doc. 18 at 1). He also "seeks a 48 hour relief to use the phone." *Id.* And he asserts that he "is housed around inmates who beat and yell all day and night." *Id.* at 2.

"Motion for Evidentiary Hearing" (Doc. 19). In his Motion for Evidentiary Hearing, Roberts states that he has tested positive for colon cancer, but ANP Kira Earnest told him they were not immediately going to do anything about it. (Doc. 19 at 1). Instead, "we will retest in a few months." *Id.* Roberts states that he has been poisoned, but "defendants are trying to make it look like natural causes." *Id.* He seeks an FBI investigation. *Id.*

**4. No Imminent Harm**

Having thoroughly reviewed Roberts's allegations and assertions in this case, the Court turns to the essential question: Has Roberts demonstrated his eligibility to proceed *in forma pauperis* through allegations of imminent serious physical injury?

Although *pro se* complaints must be liberally construed, *Topchian v. JPMorgan Chase Bank, N.A*., 760 F.3d 843, 849 (8th Cir. 2014), a prisoner's allegations of imminent danger of serious physical injury must also be plausible. *Pinder v. WellPath, LLC*, 112 F.4th 495, 500 (8th Cir. 2024), *mandate vacated on other grounds*, No. 22-3050, 2026 WL 1001876, at *1 (8th Cir. Apr. 9, 2026). "Absent specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury," three-strikers do not satisfy the imminent-danger-of-serious-physical-

injury exception to proceed *in forma pauperis*. *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003).

Importantly, "[t]o satisfy § 1915(g)'s imminent danger exception, the danger must exist *at the time the complaint or appeal is filed*, not when the alleged wrongdoing occurred." *Charron v. Allen*, 37 F.4th 483, 486 (8th Cir. 2022) (cleaned up; emphasis added). Additionally, "[s]ome circuits require an adequate nexus between the claims [a prisoner] seeks to pursue and the imminent danger he alleges, that is, he must allege an imminent danger of serious physical injury that is fairly traceable to a violation of law that the complaint asserts." *Id.*; *see also Pinder*, 112 F.4th at 504 n.6 (collecting cases).[7]

In this case, Roberts's allegations do not plausibly show he was in imminent danger of serious physical injury *at the time* he filed his Complaint on April 6, 2026. *Charron*, 37 F.4th at 486. Although Roberts has made concerning assertions of potential harm throughout the various filings in this case—particularly the denial of heart medication and food trays, the lack of an emergency asthma inhaler, the dizziness he is experiencing because of the heat, and a positive colon-cancer test—all those occurrences took place after the initiation of the Complaint. Moreover, they do not relate to the violations of law Roberts raised in either his Complaint, (Doc. 1) (denial of legal supplies, excessive force, and a

[7] The Court notes that in *Pinder*, the Eighth Circuit questioned, but remanded for reconsideration, a "claim-by-claim approach to the imminent-danger exception." *Pinder*, 112 F.4th at 502–05. In other words, the Eighth Circuit has left open the question of whether a prisoner must show imminent danger fairly traceable to *each* of the claims he seeks to pursue or whether imminent danger fairly traceable to *one* of the claims he seeks to pursue is sufficient to proceed *in forma pauperis* on all of his claims. But, no matter the Eighth Circuit's ultimate outcome on the claim-by-claim approach, a fair reading of the relevant Eighth Circuit case law—*Pinder* and *Charron*, 37 F.4th 486—and the other Circuit cases cited affirmatively therein, leads to the conclusion that the imminent danger asserted by the prisoner must be fairly traceable to *at least* one of the claims asserted in the complaint.

"bogus" disciplinary in March 2026), or his Amended Complaint (Doc. 16) (a March 2024 disciplinary; denial of legal supplies, excessive force, and "scam" disciplinary in March 2026; attempted use of unnecessary force in April 2026; denial of parole due to lack of mental health accommodations; and drugs being brought into the prison).

In short, if Roberts seeks to pursue his *new* allegations of wrongdoing—the denial of heart medication and food trays, the lack of an emergency asthma inhaler, the dizziness he is experiencing because of the heat, and a positive colon cancer test—which were not raised in either the original or operative complaint in this case, he may do so by filing a separate lawsuit after exhausting any available administrative remedies. *See* 42 U.S.C. § 1997e(a). In that instance, it would be up to the assigned judges in that case to determine if Roberts's new allegations demonstrate his eligibility to proceed without pre-payment of the fee under 28 U.S.C. § 1915(g).

But, in *this* case, Roberts's complaint allegations, set out in Section III.B.1 above, do not show that he was in imminent danger of serious physical injury when he initiated the case on April 6, 2026. At most, Roberts claims that, at the time of the Amended Complaint, he was still experiencing pain in his wrist and back from the March 17, 2026 use of force. (Doc. 16 at 4). But Roberts's allegation of pain does not indicate a forthcoming physical injury. Accordingly, Roberts may not proceed *in forma pauperis* in this action. And it is recommended that Plaintiff's Complaint and Amended Complaint be dismissed without prejudice.

## IV. CONCLUSION

Roberts has failed to comply with the Court's Orders. And, despite being given leave to amend his Complaint, Roberts has raised no allegation that would allow him to proceed *in forma pauperis*.

IT IS THEREFORE RECOMMENDED THAT:

1. Roberts's IFP Motion, (Doc. 12), be DENIED.

2. Roberts's Amended Complaint, (Doc. 16), be DISMISSED without prejudice and this case be closed.

3. Roberts's other pending Motions, (Doc. 5), (Doc. 9), (Doc. 14), (Doc. 15), (Doc. 18), (Doc. 19), be DENIED as moot.

4. The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that any *in forma pauperis* appeal would not be taken in good faith.

DATED this 30th day of June, 2026.

Benecia Moore

UNITED STATES MAGISTRATE JUDGE